1   Rosemary M. Rivas (State Bar No. 209147)
    Email: rrivas@zlk.com
2   Rosanne L. Mah (State Bar No. 242628)
    Email: rmah@zlk.com
3   **LEVI & KORSINSKY, LLP**
    388 Market Street, Suite 1300
4   San Francisco, California 94111
    Telephone: (415) 373-1671
5   Facsimile: (415) 484-1294

6   *Counsel for Plaintiff Phillip Ferraguto*

7

8                  **UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10  PHILLIP FERRAGUTO, individually and on     Case No.
    behalf of all others similarly situated,
11                                              **CLASS ACTION COMPLAINT**
12                       Plaintiffs,
    v.                                          **JURY TRIAL DEMANDED**
13
    TOYOTA MOTOR SALES, U.S.A., Inc.
14

15                       Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

Plaintiff Phillip Ferraguto ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS" or "Defendant"), based on his individual experience and personal knowledge, and the investigation of his counsel.

## I.    INTRODUCTION

1.    This is a consumer class action brought by Plaintiff Phillip Ferraguto on behalf of himself and a class of purchasers and lessees of the Toyota Rav4 Hybrid, model years 2019-2020 ("Class Vehicles").

2.    Plaintiff and Class members purchased or leased the Class Vehicles manufactured by Toyota and marketed and distributed by Defendant.  The Class Vehicles were falsely and misleadingly advertised on Defendant's website and its brochures as having a combined MPG of 40 and a 14.5-gallon fuel tank, translating into approximately 580 miles of travel on a tank of gas.

3.    Unbeknownst to Plaintiff and Class members, but known by Defendant, the fuel tank installed on the Class Vehicles suffers from a defect. Specifically, the fuel tank only allows 9-11 gallons, not the advertised 14.5 gallons ("Defect").  As a result, Plaintiff and Class members are only able to achieve between 380-440 miles on a tank of gas, which is woefully less than the 580 miles based on the advertised 40 MPG and a 14.5-gallon tank.

4.    Defendant has been aware of the Defect for a long time.  Despite the fact that TMS is aware of the Defect, TMS has failed to disclose the Defect to Plaintiff and other similarly situated consumers.

5.    As a result of the Defect and the monetary costs associated with repairs, as well as other out-of pocket losses and diminished values of the Class Vehicles, Plaintiff and Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendant's conduct.

6.    Had Plaintiff and Class members known about the Defect, they would not have bought or leased the Class Vehicles or would have paid significantly less for them.

7.    As set forth below, Plaintiff seeks redress from Defendant on behalf of himself and all others similarly situated and alleges causes of action for fraudulent concealment, breach of express

warranty, breach of implied warranty, violations of the Magnusson-Moss Warranty Act, and for unjust enrichment. Plaintiff seeks monetary and equitable relief on behalf of himself and all others similarly situated.

## II.    JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; the number of members of each of the proposed Class exceeds 100; and minimal diversity exists because at least one Plaintiff and Defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.    This Court has personal jurisdiction over the Defendant as TMS is a California corporation, it conducts substantial business in this State and in this Judicial District and/or the conduct complained of occurred in and/or emanated from this State and Judicial District.

10.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business within this Judicial District; has advertised in this Judicial District; and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this Judicial District. Accordingly, a substantial part of the events and/or omissions giving rise to the claims occurred within this Judicial District.

## III.    THE PARTIES

11.    Plaintiff Phillip Ferraguto ("Plaintiff") is a citizen and resident of the state of Massachusetts.

12.    Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS" or "Defendant") is a corporation and is organized and existing under the laws of the state of California. Defendant's corporate headquarters are located at 6565 Headquarters Drive, Plano, Texas 75024. TMS also maintains a regional office at 2451 Bishop Drive, San Ramon, California 94583.

## IV.    INTRADISTRICT ASSIGNMENT

13.    TMS maintains a corporate office in the County of Contra Costa. As such, this action may be properly assigned to the San Francisco/Oakland division of this Court pursuant to Civil Local Rule 3-2(d).

## V.    FACTUAL ALLEGATIONS

14.    TMS, also known as Toyota USA, is the sales, marketing, and distribution subsidiary for Toyota in the United States.

15.    TMS coordinates and oversees the sales of Toyota vehicles in 49 states through a network of more than 1,200 Toyota dealerships. The state of California has the greatest number of Toyota dealerships than any other state at 172 dealerships. TMS develops Toyota's television campaigns and other nationwide marketing materials, such as the brochures, and also supervises dealer marketing to ensure that dealers present a uniform image. TMS also manages regional distribution, which occurs through 12 parts centers and five vehicle centers.

### A. The 2019-2020 Toyota Rav4 Hybrids

16.    The Toyota Rav4 was the first compact crossover sports utility vehicle ("SUV") that debuted in 1994 and was designed to appeal to consumers who wanted a vehicle with the benefits of SUVs (such as more cargo space) but with the maneuverability and fuel economy of a compact car.

17.    In 2019, Toyota significantly redesigned the Rav4 Hybrid's look, making it sportier and providing more fuel efficiency. Defendant advertised that with the Toyota Rav4 Hybrid, drivers would "go farther" and "go faster."

18.    Defendant also, through its network of Toyota dealerships, touted the Rav4 Hybrid's combination of utility, performance and fuel economy.  For example, one dealership marketed the 2020 Toyota Rav4 Hybrid as follows:

> The 2020 Toyota RAV4 Hybrid is a machine that is designed for comfort, performance, and efficiency. You don't need to sacrifice your adventures for a more fuel-efficient vehicle. You can take a step inside the 2020 Toyota RAV4 Hybrid and learn that this model has the power to take you where you want to go while saving on energy. Let's take a look at the 2020 Toyota RAV4 Hybrid engine specs and gas mileage to learn more.

Case No.
CLASS ACTION COMPLAINT

19.    The redesigned Toyota Rav4 Hybrid was released in December 2018 and available for sale in March 2019 in six different models: LE, XLE, XLE Premium, Adventure and Limited.

20.    Knowing the capacity of a fuel tank and the fuel economy of a vehicle is important to consumers and allows them to plan their travel, including driving distance, refueling stops, and fuel costs. The more miles a vehicle can go on a tank of gas also means fewer trips to a gas station, which also saves on time and money.

21.    Prior Toyota Rav4 Hybrid models, namely the 2016-2018 model years, had 14.8-gallon gas tanks.  Starting with the redesigned 2019 Rav4 Hybrid and then with the 2020 model year, TMS marketed the compact SUV as having a combined 40 MPG and gas tanks with the capacity to hold 14.5 gallons, for a total driving distance of 580 miles.  Specifically, TMS represented in its marketing brochures (which TMS produces for each of Toyota model) that the 2019 and 2020 Toyota Rav4 Hybrid had a combined 40 MPG and a 14.5-gallon gas tank.[1] These same specifications were provided to Fueleconomy.com, which is maintained by the Department of Energy's Office of Energy Efficiency and Renewable Energy using data from the U.S. Environmental Protection Agency (EPA). Fueleconomy.com is "an Internet resource that helps consumers make informed fuel economy choices when purchasing a vehicle and achieve the best fuel economy possible from the cars they own."[2] Specifically, Fueleconomy.com provided the following information relating to the 2019-2020 Toyota Rav4 Hybrids:

---

[1] https://www.toyota.com/content/ebrochure/2020/rav4_ebrochure.pdf (last visited April 6, 2020).

[2] *See* https://afdc.energy.gov/files/u/publication/what_is_FE-WEB.pdf (last visited April 6, 2020).

Case No.

CLASS ACTION COMPLAINT

22.    Similarly, the Monroney sticker[3] on the 2019-2020 Toyota Rav4 Hybrids represented 40 MPG of combined city and highway driving (41 city/38 highway).  The window sticker also referenced Fueleconomy.gov, which, as indicated above, states that the 2019-2020 Toyota Rav4s have 14.5-gallon fuel tanks.

---

[3] The Monroney sticker, also known as the "window sticker," is required by law to be displayed on all new vehicles.

Case No.
CLASS ACTION COMPLAINT

23.     The Owner Manuals provided with each 2019-2020 Toyota Rav4 purchase or lease also represented that the SUVs had a fuel tank capacity of 14.5.[4]

**B. The 2019-2020 Rav4 Hybrids Suffer from A Defect That Permits Only About 11 Gallons of Fuel**

24.     Contrary to the marketing materials described above, the 2019-2020 Toyota Rav4 Hybrids do not have a fuel tank with the capacity to hold 14.5 gallons and therefore do not achieve the distance of approximately 580 miles per tank of gas.

25.     Instead, the Class Vehicles suffer from the Defect in that the fuel tank allows only 9-11 gallons instead of the 14.5-gallons represented by TMS.  This is low for a compact SUV, as competing compact SUVs typically have the capacity of holding 13 or more gallons of gasoline and prior model years held 14.8 gallons of gas.

26.     Hundreds and hundreds of consumers have complained that they cannot fill the gas tank to capacity and only achieve between 9-11 gallons. Specifically, consumers have complained in YouTube videos, on the NHTSA safecar.gov website, on various online forums, to Toyota dealerships and to Defendant that they cannot put more than 11 gallons of gas in the fuel tank.  Consumers report that the fuel gauge shows a full tank although there was only a partial fill-up, while others say the fuel gauges will not show a complete fill-up.  Below are just a few examples of the complaints:

   • I have the same issue in my new Toyota Rav4 Hybrid Limited 2019. Tried to resolve it with Toyota Corporate office and they opened the case. It is weird that they pretend that they hear about this problem for the first time while there are dozens of disappointed Toyota owners on the forum. The dealership suggested that I drop my car with than for a couple of days, and they will try to fix the problem. But when I asked them straight forward if they really know what they are going to do, if there is a known remedy for this problem, they said - NO. This problem also raises concerns about the calibration of the fuel gadget/display. I understand that issuing a recall on this matter would put the

---

[4] https://www.toyota.com/t3Portal/document/om-s/OM0R010U/pdf/OM0R010U.pdf (last visited April 6, 2020).

Case No.
CLASS ACTION COMPLAINT

company in big trouble. For the manufacturer (or the dealership, or both) it may mean an accusation of false advertising and lead to a class action. Buying an almost $40 K car and having such problem feels really ridiculous... This is my third Toyota in the last 25 years, and the first two were wonderful. But the basic rule of engineering - "if you cannot improve it, do not make it worse" - was definitely not considered here...

- I just bought the 2020 Rav4 hybrid. I did a lot of research online before buying and nothing ever came up about this fuel issue when I was looking for pros & cons. 1st time I filled up it was about 11 gals of gas, the next couple times only about 10.5 and at the time I didn't know how many gals the tanks was so I thought, wow it's got a small tank. But when I checked online, I found out it has a 14.5 gal tank and then came across a slew of websites about all the problems with fuel tanks and this goes back to the 2019 model. The internet sure is a disappointing place to do any research b/c it blocks all negatives things from coming up when you are just researching to buy a car. My question to Toyota is why are you putting out a new model 2020 car when you haven't fixed the problem from the 2019? really maddening situation. What do I do?

- We have the same issue on our 2019 RAV XLE Hybrid. Called and reported to Toyota in October. Dealership took it for 2 days and confirmed the problem existed. Service manager said they had replaced some tanks for previous cases, this helped the issue temporarily but it came back. Nothing they could do until Toyota comes up with a fix. Haven't heard anything from them in months.

- Same problem on our 2019 LE Hybrid. I have an open case with Toyota Corporate, they urged me to take it to the dealership. The dealership said that corporate is aware of the issue, but were instructed to not perform any repairs at this time. Extremely discouraging as a consumer and beyond frustrating. Toyota needs to recall and stop the selling of these defective vehicles at once. If you are having this issue please open a case with corporate, the more the better.

Case No.
CLASS ACTION COMPLAINT

- We purchased a RAV4 XLE Hybrid in April 2019 and we have this issue every fill-up. In Oregon, it's illegal to pump your own gas and we pretty much get a 3/4 tank fill up unless we plead and beg the gas station attendant to keep working at it. It's very frustrating to have to ask at every fill-up "please go way beyond the initial click-off", "please rotate the nozzle and add more fuel to the tank", "really, it will take several more gallons - please keep working at filling the tank". There are 4,000 owner complaints regarding this issue on the following two RAV4 forum discussions: https://www.rav4world.com/threads/have-you-had-trouble-filling-your-hybrid-gas-tank.300662/

    https://www.rav4world.com/threads/difficulty-with-getting-fuel-tank-full.298909.

27.     According to *Automotive News*, when Toyota redesigned the Rav4 Hybrid, it modified the fuel tank from a "longitudinal 14.8-gallon tank roughly shaped like a Native American papoose" (Diagram A) to a "latitudinal, saddle-shaped design with a 14.5-gallon capacity" (Diagram B).

**DIAGRAM A**



CLASS ACTION COMPLAINT



**DIAGRAM B**

28.    Toyota confirmed that it was "investigating a fuel tank shape issue" to *Automotive News.*

According to Toyota:

Toyota takes customer concerns seriously. Toyota has received customer reports of certain 2019 and 2020 RAV4 Hybrid vehicle fuel gauges displaying less than full and/or total fuel dispensed is less than expected, when the fuel nozzle automatically clicks off. Some customer reports have also noted the "Distance to Empty" shown on the multi-information display is less than expected. Based on our ongoing investigation, Toyota believes these conditions to be primarily related to a variation in the fuel tank shape. As indicated in the owner's manual, customers should still refuel when the low fuel light illuminates, and when refueling, customers should not "top off" the fuel tank. While we investigate this issue, Toyota has an interim option available until a final remedy is identified. We recommend customers who have a concern visit a Toyota dealer. Toyota's Customer Experience Center at 1-800-331-4331 is also available to answer questions. Until a final remedy is identified, the interim option is to install a replacement tank. Based on our ongoing investigation, replacing the fuel tank may mitigate these concerns, although it may not prevent the condition from reoccurring."

### C.       Plaintiff's Experience

29.      Plaintiff bought a new 2019 Toyota Rav4 Hybrid on May 14, 2019 from Hyannis Toyota. Before Plaintiff bought the vehicle, he performed research online and reviewed the Toyota website and Consumer Reports, Car and Driver, and the Kelley Blue Book, among other things.   Plaintiff also reviewed the Toyota Rav4 Hybrid brochure.  He recalls reading in these materials that the Toyota Rav4 Hybrid achieved a combined 40 MPG (41 city/38 highway) and that the fuel tank had a capacity to hold 14.5 gallons of gas.  He relied on the information he saw, namely, that the Toyota Rav4 Hybrid achieved a combined 40 MPG and had a 14.5-gallon fuel tank, in deciding to buy the 2019 Toyota Rav4 Hybrid.

30.      It was extremely important to Plaintiff, as to other consumers, that he could fill up the fuel tank to the stated capacity of 14.5 gallons.  If TMS had disclosed to Plaintiff that the vehicle's fuel tank was defective and could not hold the represented 14.5 gallons of gas in the brochure, on the Toyota website, or on the Monroney sticker (which Plaintiff also reviewed before buying), Plaintiff would have read the disclosure and would have acted differently.  Specifically, had Plaintiff known that that the Toyota Rav4 Hybrid's fuel tank would not hold 14.5 gallons of gas, but instead somewhere in the range of 9-11 gallons, he would not have bought the vehicle.

### CLASS ACTION ALLEGATIONS

31.      Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), (b)(3) and (c)(4), Plaintiff brings this lawsuit on behalf of himself and classes of similarly situated individuals defined as follows:

32.      All persons who purchased or leased a Class Vehicle in the United States (the "Nationwide Class"); and

33.      All persons who purchased or leased a Class Vehicle(s) in the State of Massachusetts (the "Massachusetts Class").

34.      The Nationwide Class and Massachusetts Class are hereafter referred to as the "Class" unless otherwise noted.

35.      Excluded from the proposed Class are: the Defendant, any entity in which the Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by the Defendant, as well as the

officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant, and judicial officers to whom this action is assigned and their immediate family members.

36.    Plaintiff reserves the right to re-define the Class definitions after conducting discovery.

37.    **Numerosity (Fed. R. Civ. P. 23(a)(1).**    Pursuant to Rule 23(a)(1), the Class is so numerous that joinder of all members would be impracticable. While the exact number of Class members has not yet been determined, Plaintiff believes that the Class comprises of at least thousands of persons. The Class, however, is readily identifiable from information and records in the possession of Defendant and can be ascertained through appropriate investigation and discovery.  Class members may be notified of the pendency of this action by any appropriate methods approved by the Court, which may include by mail or email, internet postings, or by published noticed.

38.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3)).**    Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual members of the Class.  Questions common to the Class include, but not limited to the following:

(a)    Whether Defendant represented that the fuel tank in the Class Vehicles had the capacity to hold 14.5 gallons of gas and achieved 41 MPG in the city and 38 MPG on the highway (combined 40 MPG) for a total of 580 miles of travel per gas tank;

(b)    Whether Defendant knew or should have known that the fuel tank in the Class Vehicles was defective and could not hold 14.5 gallons of gas;

(c)    Whether Defendant had a duty to disclose to Plaintiff and Class members that the fuel tank was defective;

(d)    Whether Defendant had a duty to disclose that as a result of the defective fuel tank, the Class Vehicles could not travel 580 miles on a tank of gas based on the advertised combined 40 MPG and a 14.5-gallon tank.

(e)    Whether the fact that the Toyota Rav4 Hybrid's fuel tank was defective and could not hold 14.5 gallons of gas constitutes a material fact to consumers;

(f)     Whether the fact that the Toyota Rav4 Hybrid's mileage range is less than the 580 miles based on the advertised combined 40 MPG and a 14.5-gallon fuel tank constitutes a material fact to consumers;

(g)     Whether Defendant's conduct constitutes a breach of express warranty;

(h)     Whether Defendant's conduct constitutes a breach of the implied warranty of merchantability;

(i)     Whether Defendant violated the Magnusson-Moss Warranty Act;

(j)     Whether Plaintiff and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages; and

(k)     Whether Plaintiff and the Class are entitled to equitable relief, including an injunction enjoining Defendant from engaging in the wrongful and unlawful conduct alleged herein.

39.     **Typicality (Fed. R. Civ. P. 23(a)(3).**  Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's actionable conduct.  Plaintiff and members of the Class were similarly injured through Defendant's wrongful conduct as alleged herein.  Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal theories and remedial theories.

40.     **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4).**  Pursuant to Rule 23(a)(4), Plaintiff and his counsel will fairly and adequately protect the interest of the Class.  Plaintiff has no interest antagonistic to, or in conflict with, the Class that he seeks to represent.  Plaintiff has retained counsel competent and capable attorneys with significant experienced in complex and class action litigation, including consumer class actions.  Plaintiff and its counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial and other resources to do so.

Case No.

41.    **Superiority (Fed. R. Civ. P 23(b)(3).** Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  There will be no significant difficulty in the management of this case as a class action.

42.    **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).**  In the alternative, this action may properly be maintained as a class action, because:

(a)    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant; or

(b)    the prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

43.    **Issue Certification (Fed. R. Civ. P 23(c)(4)).**  In the alternative, the common questions of fact and law above are appropriate for issue certification on behalf of the proposed Class.

**FIRST CAUSE OF ACTION**

**(Violation of Massachusetts General Laws Chapter 106 § 2-313**

**(Breach of Express Warranty)**

**(On behalf of the Massachusetts Class)**

44.   Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

45.   Plaintiff brings this cause of action individually and on behalf of the Massachusetts Class.

46.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Mass. Gen. Laws ch. 106, § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

47.   With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Mass. Gen. Laws ch. 106, § 2A-103(1)(p).

48.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106, §§ 2-105(1) and 2A-103(1)(h).

49.   Defendant breached express warranties made to Plaintiff and Class members.

50.   Defendant made express warranties and/or approved the use of the expressed warranties to Plaintiff and the Class members that the Class Vehicles they purchased were equipped with a fuel tank that can hold 14.5 gallons, resulting in the Class Vehicles' mileage range at 580 miles.  The Class Vehicles with the defective fuel tanks were marketed, distributed, and warranted by Defendant and are covered by the express warranties.

51.   With the purchase or lease of its Class Vehicles, Defendant provides an express "New Vehicle Limited Warranty" ("NVLW") that covers "repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota" for a period of 36 months or 36,000 miles, whichever occurs first.

52.   Defendant's express warranties described herein became part of the basis of the bargain for Plaintiff and Class members. These express warranties were breached when Plaintiff and the Class members purchased or leased the Class Vehicles equipped with the Defect. As a result of the Defect, the

1  Class Vehicles' mileage range is significantly less than the 580 miles based on the advertised combined

2  40 MPG and a 14.5-gallon fuel tank.

3        53.    Plaintiff and the Class members experienced the Defect within the warranty period.

4  Defendant failed to inform Plaintiff and the Class members that the Class Vehicles contain the Defect.

5        54.    Plaintiff was not required to notify Defendant of the breach because affording Defendant a

6  reasonable opportunity to cure its breach of written warranty would have been futile.    Nonetheless,

7  Defendant had notice that its Class Vehicles contained the Defect by its public admission in December

8  2019 that the fuel tank shape in its Class Vehicles prevent full refueling by up to several gallons and

9  impact the Class Vehicles' mileage range of 580 miles, as well as numerous NHTSA and consumer

10  complaints.

11        55.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and

12  Class members have been damaged in an amount to be proven at trial.

13                              **SECOND CAUSE OF ACTION**

14               **(Violation of Massachusetts General Laws Chapter 106 § 2-314)**

15                          **(Implied Warranty of Merchantability)**

16                          **(On behalf of the Massachusetts Class)**

17        56.    Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth

18  herein.

19        57.    Plaintiff brings this cause of action individually and on behalf of the Massachusetts Class.

20        58.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles

21  under Mass. Gen. Laws ch. 106, § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

22        59.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor

23  vehicles under Mass. Gen. Laws ch. 106, § 2A-103(1)(p).

24        60.    The Class Vehicles are and were at all relevant times "goods" within the meaning of

25  Mass. Gen. Laws ch. 106, §§ 2-105(1) and 2A-103(1)(h).

26

27

61.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the Class Vehicles are used is implied in law pursuant to Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212.

62.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the Class Vehicles are used. The Class Vehicles contained the Defect and as a result of the Defect, the Class Vehicles' mileage range is less than the 580 miles based on the advertised 40 MPG and 14.5-gallon fuel tank.

63.    Defendant was on notice that its Class Vehicles were equipped with the Defect by its public admission in December 2019 that the fuel tank shape in its Class Vehicles prevent full refueling by up to several gallons and impact the Class Vehicles' mileage range of 580 miles, as well as numerous NHTSA and consumer complaints.

64.    Plaintiff and all Class members are third-party beneficiaries of the contract between TMS and a network of Toyota dealerships from which the Class Vehicles were purchased or leased.  The Toyota dealerships from which Plaintiff and Class members purchased or leased the Class Vehicles are the agents of TMS and Plaintiff and Class members are the intended consumers of the of the Class Vehicles and all applicable warranty agreements were created and entered into for the benefit of the ultimate consumers of the Class Vehicles.

65.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class members have been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.)**

**(On behalf of the Nationwide Class)**

66.    Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

67.    Plaintiff brings this cause of action on behalf of himself and on behalf the Nationwide Class.

Case No.
CLASS ACTION COMPLAINT

68.     Plaintiff and Class members are "consumers" within the meaning of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

69.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

70.     The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

71.     15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiff properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

72.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  Defendant's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).  Defendant provided Plaintiff and Class members an implied warranty of merchantability within the meaning of 15 U.S.C. § 2301(7).

73.     Defendant breached the express warranties by selling and leasing Class Vehicles equipped the Defect, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, fuel system components that contribute to the defective fuel tank.

74.     Defendant's breach of the express warranties has deprived Plaintiff and Class members of the benefit of the bargain by selling and leasing Class Vehicles equipped with the Defect.

75.     Defendant breached the implied warranty of merchantability because the Class Vehicles were not fit for the ordinary purpose for which such goods are used.  The Class Vehicles contain the Defect that renders them unsafe, inconvenient, and imperfect such that Plaintiff and Class members would not have purchased the Class Vehicles had they known of the Defect, as described throughout this Complaint.

76.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of the Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Case No.

77.     Plaintiff, individually, and on behalf of Class members, seek all damages permitted by law, including diminution in value of their Class Vehicles, in an amount to be proven at trial.

78.     Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and Class members in connection with the commencement and prosecution of this action.

79.     Plaintiff and Class members are also entitled to equitable relief pursuant to 15 U.S.C. § 2310(d)(1) and damages as a result of Defendant's violation of its written and/or implied warranties.

**FOURTH CAUSE OF ACTION**

**(Fraudulent Concealment on behalf of the Nationwide Class)**

80.     Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

81.     Defendant intentionally concealed that the Class Vehicles contained the Defect.  With regard to the 2019-2020 Toyota Rav4 Hybrid vehicles, Defendant had exclusive knowledge that the fuel tanks did not hold the represented 14.5 gallons of gas, based on both the testing underlying the fuel information it provided to government agencies, and/or from the fact that hundreds of consumers who purchased the Toyota Rav4 Hybrids began complaining of the Defect in 2019 to Defendant, Toyota dealerships, and the National Highway Transportation Safety Association, yet Defendant continued to sell the Class Vehicles without disclosing the Defect or that the Class Vehicles could not achieve the 580 total mileage on a tank of gas.

82.     Defendant also affirmatively misrepresented to Plaintiff and Class members in advertising and other forms of communication, including standard and uniform material provided with each Class Vehicle and on its website, that the Class Vehicles being sold had no significant defects, that the fuel tank had a capacity of 14.5 gallons, that the Class Vehicles achieved a combined 40 MPG, and that the Class Vehicles' drivers could travel 580 miles on a single "full" tank.  Defendant knew these representations were false when made.

83.    Defendant had a duty to disclose that the Class Vehicles were equipped with the Defect, because Plaintiff and the Class members relied on Defendant's material representations that the Class Vehicles they purchased or leased were free from defects.

84.    As alleged in this Complaint, at all relevant times, Defendant has held out the Class Vehicles and/or the defective fuel tank installed in them to be free from defects. Defendant marketed and advertised the many benefits and advantages of the Class Vehicles' fuel tank capacity, but nonetheless, Defendant intentionally failed to disclose important facts that the fuel tank in the Class Vehicles is defective, making other disclosures about the Class Vehicles' fuel tank capacity deceptive.

85.    Only the Defendant knew the truth about the Defect, whereas Plaintiff and the Class members did not know of these facts and Defendant actively concealed these facts from Plaintiff and the Class members.

86.    Plaintiff and the Class members reasonably relied on Defendant's deception. They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and the Class members did not, and could not, determine Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and the Class members by concealing the true facts about the Defect.

87.    Defendant's false representations and omissions were material to consumers because they concerned qualities of the Class Vehicles that played a significant role in the value of the Class Vehicles. As the Defendant well knew, their customers, including Plaintiff and Class members, highly valued that the Class Vehicles had a capacity of 14.5 gallons, a combined 40 MPG, and that they could travel 580 miles on a single "full" tank, and they paid accordingly.

88.    Defendant had a duty to disclose the defective nature of the fuel tank installed in the Class Vehicles because details of the true facts were known and/or accessible only by Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or the Class members.

89.    Defendant's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect. These omitted and concealed facts were

material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiff and the Class members.

90.     Defendant also had a duty to disclose that the Class Vehicles were equipped with the Defect because it presents a safety risk.  For example, consumers have reported that the fuel gauge shows a full tank of gas when the tank is only filled partially.  Accordingly, Plaintiff and Class members are unable to rely on the accuracy of the fuel gauge.  A properly functioning fuel gauge is necessary so that consumers are not stranded either on the highway or in the city and present a hazard to oncoming traffic.

91.     Plaintiff and the Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased or paid as much for vehicles with faulty fuel tank capacity, and/or would have taken other affirmative steps in light of the information concealed from them.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or the Class members.

92.     Because of the concealment and/or suppression of facts, Plaintiff and the Class members sustained damage because they own(ed) or lease(ed) Class Vehicles that are diminished in value as a result of Defendant's concealment of the true quality of those Class Vehicles' fuel tank capacity. Had Plaintiff and the Class members been aware of the true nature of the Defect in the Class Vehicles, and Defendant's disregard for the truth, Plaintiff and the Class members who purchased or leased a Class Vehicle would not have purchased or leased them at all, or would have paid a lower amount for them as the Class Vehicles were worth substantially less.

93.     The value of Plaintiff's and the Class members' Class Vehicles has diminished as a result of Defendant's fraudulent concealment of the Defect in the Class Vehicles, which has made any reasonable consumer reluctant to purchase or lease any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the Class Vehicles.

94.     Accordingly, Defendant is liable to Plaintiff and the Class members for damages in an amount to be proven at trial.

95.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class members' rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**FIFTH CAUSE OF ACTION**

**(Unjust Enrichment on behalf of the Nationwide Class)**

96.    Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

97.    Plaintiff brings this cause of action individually and on behalf of the Nationwide Class.

98.    Plaintiff and members of the Class conferred a benefit upon the Defendant.  Namely, Plaintiff and members of the Class overpaid, or paid money to Defendant for the Class Vehicles that they otherwise would not have paid had they known about the Defendant.  Defendant retained the benefit conferred by Plaintiff and Class members.

99.    Defendant retained the benefit conferred by Plaintiff and Class members under circumstances that make it inequitable to retain such benefit without paying the value thereof. Specifically, Defendant retained that benefit despite the fact that the Class Vehicles were equipped with the Defect and Plaintiff and Class members did not receive the benefit of their bargain.

100.    Defendant has also generated substantial revenue from the unlawful conduct described herein.

101.    Plaintiff and members of the Class are therefore entitled to restitution.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, pray for relief as follows:

A. An order certifying the Nationwide Class and Massachusetts Class and designating Plaintiff as the named representative of the Class and designating its attorneys as Class Counsel;

CLASS ACTION COMPLAINT

B.  A declaration that Defendant is financially responsible to notifying all Class Members about the defective nature of the Class Vehicles;

C.  An award to Plaintiff and the Class of compensatory, exemplary, and statutory damages, in an amount to be proven at trial;

D.  An order enjoining Defendant from further deceptive distribution, sales, and practices with respect to their Class Vehicles;

E.  For restitution of all money or property wrongfully obtained by Defendant;

F.  An award of reasonable attorneys' fees, costs, and expenses;

G.  An award of pre-judgment and post-judgment interest, as provided by law;

H.  Leave to amend the Complaint to conform to the evidence produced at trial; and

I.  Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the proposed Nationwide Class and Massachusetts Class, hereby demands a trial by jury of all claims so triable.

Dated: April 8, 2020

**LEVI & KORSINSKY, LLP**

By: /s/ *Rosemary M. Rivas*
Rosemary M. Rivas
Email: rrivas@zlk.com
Rosanne L. Mah
Email: rmah@zlk.com
388 Market Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT